THOMPSON v. CONNECTICUT FIRE INS. CO.

No. 33804.   Oct. 31, 1950.

*223 P. 2d 757.*

Roy E. Graham and Chas. D. Scales, both of Oklahoma City, for plaintiff in error.

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for defendant in error.

O'NEAL, J. D. K. Thompson, plaintiff in error, commenced this action against the Connecticut Fire Insurance Company seeking to recover the sum of $900 on a policy of insurance insuring an automobile by which policy the insurance company agreed to pay cash value of said automobile in the event of the loss of said automobile by theft (broad form), and the further sum of $5 per day, but not exceeding $150, or the actual cash value of the automobile at the time of the theft, whichever is less, incurred for the rental of a substitute automobile.

Plaintiff, in his second amended petition, alleged that the actual value of the automobile involved was $750, and that more than 30 days had elapsed during which plaintiff had incurred expenses by reason of the loss of the use of the said automobile. In his second amended petition plaintiff alleged:

" . . . That on or about the 7th day of April, 1947, plaintiff lost said automobile by larceny of the same by one Bill G. Markley, who, on said date, with the intent to deprive plaintiff thereof took the same from plaintiff by fraud and stealth as follow: That prior to said time plaintiff advertised said automobile for sale and in response to said advertisement said Bill G. Markley agreed to give plaintiff the sum of $750.00 cash for the same and plaintiff agreed to sell the same to him for the said sum and said Bill G. Markley thereupon made, executed and delivered to plaintiff his check, drawn on an Oklahoma City Bank, therefor in said sum and plaintiff then and there assigned the Oklahoma Highway Department title thereto to said Bill G. Markley and delivered said automobile to him and he drove the same away, that it was then after banking hours and plaintiff forthwith, as soon as the bank opened the next day presented said check to the bank on which it was drawn for payment and payment was refused for want of funds on deposit belonging to said Bill G. Markley with which to pay the same; that said Bill G. Markley falsely and fraudulently represented to plaintiff that he had funds in the bank on which said check was drawn; and suppressed the fact that the same was a 'hot check' and failed to disclose said fact to plaintiff, that plaintiff then and there relied upon the false representations so made and believed them to be true, and, so relying and believing, was thereby induced to assign said title to him and deliver said automobile to him and not otherwise; that said Bill G. Markley well knew said representations to be false and made them for the purpose and with intent that this plaintiff should rely and act thereon, and obtained the title and possession of said automobile from plaintiff by fraud as aforesaid with the feloneous (sic) intent at the time taking said automobile and depriving plaintiff permanently. That said check given was fictitious, forged and fraudulent and that said frauds were committed with no intention of buying said automobile but for the unlawful purpose of depriving plaintiff of said automobile and the fraudulent scheme to deprive plaintiff of said automobile was preconceived and plaintiff never consented to part with his automobile without full payment therefor."

532

The insurance company filed a demurrer to said second amended petition on the grounds:

"That said second amended petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant."

Said demurrer was presented to and was sustained by the court. Whereupon plaintiff elected to stand upon his petition, as amended, and thereupon the action was dismissed by the court, and plaintiff appeals.

The sole question presented is one of law, that is, whether the acts of Bill G. Markley in obtaining the automobile in the manner alleged in plaintiff's second petition constituted larceny as defined in the statutes of Oklahoma. As stated in Brady v. Norwich Union Fire Ins. Society, 47 R. I. 416, 133 Atl. 799:

"The cases on this question are in conflict due largely to the difference in state laws."

In Emmett H. Hill et al. v. North River Insurance Co., 111 Kan. 225, 207 P. 205, 24 A.L.R. 736, a case wherein the facts with reference to misrepresentation and fraud were quite similar to the facts herein, it was held:

"Under a contract of insurance issued to protect a dealer in automobiles against 'theft, robbery, or pilferage,' the act of a swindler who deprived the insured of an automobile by means of a preconceived plan, which involved impersonation, misrepresentation, and fraud, was a species of 'theft' for which the insurance company was liable."

In Overland-Reno Co. v. International Indemnity Co., 111 Kan. 668, 208 P. 548, it was held:

"Following Hill & Howard v. North River Insurance Co., 111 Kan. 225, 207 P. 205, it is held that, under a contract of insurance against 'theft, robbery or pilferage,' the act of the swindler by which the owner of the insured property is swindled out of it through false pretenses or other fraudulent trick or device with the preconceived intent and plan of the swindler not to pay for it

is a species of theft for which the insurance company is liable."

In Kansas the statute defining larceny is the same as that of Oklahoma.

In Rhode Island, Brady v. Norwich Union Fire Insurance Society, supra, under a statute somewhat similar to that of Oklahoma, it was held:

"Acquiring automobile by pretended purchase on condition of immediate delivery, giving false name and address and worthless check after banking hours, held to be 'theft' within meaning of insurance policy, in view of Gen. Laws 1923, sections 4864, 6070, 6072, 6073, 6075."

In Kellogg v. State, 26 Ohio St. 15, 2 Am. Crim. Rep. 96, it was held:

"Where the owner intends to transfer, not the possession merely, but also the title to the property, although induced thereto by the fraud and fraudulent pretenses of the taker, the taking and carrying away do not constitute a larceny. In such case the title vests in the fraudulent taker, and he cannot be convicted of the crime of larceny, for the simple reason that, at the time of the transaction, he did not take and carry away the goods of another person, but the goods of himself."

In Illinois Auto. Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 24 A.L.R. 734, 92 So. 429, it was held:

"The doctrine is well established that, where the owner intends to transfer, not the possession merely, but also the title to the property, although induced thereto by the fraud or fraudulent pretenses of the taker, the taking and carrying away do not constitute theft or larceny."

In Cedar Rapids National Bank v. American Surety Co. (1923) 197 Iowa 878, 195 N. W. 253, it was said:

"If the wrongdoer by false pretenses or trick induce the injured party to surrender to him the possession of the property without any intent of the injured party to pass the title of such property to the wrongdoer, and if the wrongdoer so obtain possession of the property with intent to appropriate the

same to his own use, then the crime thus committed is a larceny by trick. In such a case the fraudulent inducement is deemed the equivalent of a trespass and of a felonious taking, which is an essential element of the crime of larceny. On the other hand, if the wrongdoer fraudulently induce the injured party to surrender to him not simply the temporary possession of the property, but the absolute title and possession of the property, then his offense is that of obtaining property by false pretense, and not that of larceny."

Again, in Ohio Royal Insurance Co. v. William S. Jack, 113 Ohio St. 153, 148 N. E. 923, 46 A.L.R. 529, where the facts were quite similar to the facts in the instant case, it was held:

"Where an owner of an automobile executes a contract of sale for the car, helps the vendee change the license numbers, and, in pursuance of his contract of sale, transfers possession and title to vendee, who pays therefor with a forged check, such fraudulent transaction so perpetrated by the vendee does not constitute a 'theft,' within the terms of the policy."

However, the definition of larceny in Ohio is not the same as the definition of larceny in the Oklahoma statutes. The Ohio statute says (Gen. Code, §12447):

"Whoever steals anything of value is guilty of larceny."

The Oklahoma statute says:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof." 21 O. S. 1941 §1701.

Whether the acts of an accused in connection with the fraudulent pretended purchase of property constitutes larceny has been before our Criminal Court of Appeals in a number of cases, but the decisions of that court are not entirely in harmony.

In Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712, decided April 14, 1938, it was held:

"The distinction between 'larceny' and 'false pretense' is a very narrow margin. The character of the crime depends on the intention of the parties. If the owner parts with the 'possession' and 'title' of the property 'voluntarily,' it is not larceny. If the owner is induced to part with possession by fraud and misrepresentation and the title to the property does not pass, and there is a fraudulent intent at the time to appropriate the property to one's own use and deprive the owner thereof, it is larceny."

In the opinion in that case the court cites and quotes a note in 31 A.L.R., page 579, wherein the editor says:

" 'Upon a sale of personalty for cash, payment is a condition of the passing of title (24 R.C.L. 23), and when the buyer gives a check or draft for the purchase price, and it is accepted by the seller as the means of payment, it constitutes only a conditional payment, and as between the parties payment becomes absolute only when the paper is paid, and until such payment title does not pass.' "

The court also cites a number of cases by the Supreme Court, and particularly Mott v. Nelson, 96 Okla. 117, 220 P. 617. The court also cites United States v. Rodgers, 1 Mackey, D. C. 419, wherein it was said:

" 'It has been held that where a person procures the sale of goods to himself on credit by false representations, or by giving or exhibiting a false token, not intending at the time to pay for them, he is guilty of larceny.' "

In Abbott et al. v. State, 78 Okla. Cr. 407, 149 P. 2d 514, by the same author as Riley v. State, supra, decided June 7, 1944, it was held:

"If one obtains possession of property by fraud and the owner intends to part with title as well as his possession, offense is that of 'obtaining property by false pretense,' but if the possession is fraudulently obtained with intent on part of party obtaining it to convert the property to his own use, the person parting with it intends to part with his possession merely, and not with his title to the property, the offense is 'larceny.' "

534

In Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95, it was held:

"If the owner parts with the possession and title, due to the deception and artifice of the taker, then the offense constitutes obtaining property by false pretenses, and not larceny by fraud."

And:

"The intention of the owner not to part with title to his property when relinquishing possession is the vital point to be determined in distinguishing between larceny by fraud and obtaining property by false pretenses."

Therein the court cites and quotes with approval the rule stated in 32 Am. Jur., Larceny, sec. 7, page 83, as follows:

" 'The distinction (between larceny by fraud and obtaining property by false pretenses) is a very nice one in many instances, and in some of the old English cases the difference is more artificial than real, resting purely on technical grounds. The character and nature of the crime depend on the intention of the parties. The intention of the owner not to part with his property when relinquishing possession is, in this class of cases, the gist and essence of the offense of larceny and the vital point on which the crime hinges and is to be determined. The correct distinction in cases of this kind seems to be that if by means of any trick, fraud, or artifice the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means, where the requisite felonious intent is present at the time, will amount to larceny; whereas, if the owner parts with not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but the crime of obtaining goods by false pretenses. Primarily, therefore, the nature of the offense in a particular case where possession of goods or money is obtained by fraud is determinable by solution of the question whether the owner, in parting with possession, intended to part with his title also. Accordingly, one test for distinguishing between larceny and obtaining property, other than money, by false pretenses is said to be whether the offender can confer a good title on another by the sale and delivery of the property. If he can, the crime is obtaining property by false pretenses. If he cannot, the crime is larceny.' "

If we are to follow, or even be guided, by Riley v. State, supra, we would be impelled to hold that a clear case of larceny by fraud was pleaded by plaintiff in his second amended petition.

But under the later decisions of the Criminal Court of Appeals, as well as the general rule, we are inclined to follow the rule stated in Royal Insurance Co. v. William S. Jack, supra, and hold that where the owner of an automobile enters into a contract for sale of the automobile, assigns his certificate of title to the vendee, and in pursuance of his contract of sale transfers possession and title to the vendee who pays therefor with a worthless or forged check, and in connection therewith makes false statements as to the genuineness of said check, and other false statements, the offense is obtaining property under false pretenses and does not constitute theft within the terms of an insurance policy which insures the owner against loss by "theft (broad form)."

Affirmed.

DAVISON, C.J., and WELCH, GIBSON, and LUTTRELL, JJ., concur. ARNOLD, V.C.J., and CORN, JOHNSON, and HALLEY, JJ., dissent.