19 So.2d 401

**FLANDELL v. STATE.**

6 Div. 38.

Court of Appeals of Alabama.
June 30, 1944.

Rehearing Denied Aug. 22, 1944.

Appeal from Circuit Court, Jefferson County; John C. Morrow, Judge.

Aaron Flandell was convicted of vagrancy, and he appeals.

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was charged with, tried for, and convicted of, the offense of vagrancy. Code 1940, Tit. 14, §§ 437, 438.

It will be noted that the Code Section defining "vagrants" (437 of Tit. 14, supra) has thirteen sub-heads.

[1] On the trial of this appellant it was claimed by the State—and its undisputed testimony tended to support its claim—that he was a vagrant as described in sub-heads one, two, three or six of said Code Section. Of course if the testimony showed, in the required way, him to be a vagrant as described in any sub-head of said Code Section, he would be as guilty as if he were shown to be a vagrant as described in all of same—or any other one of same. Brannon v. State, 16 Ala.App. 259, 76 So. 991.

For clarity we quote the four sub-heads of Code Section 437 of Tit. 14, of the Code of 1940, under which it was submitted to the jury to find appellant guilty vel non under the testimony in this case.

They are: (1) "Any person who wanders or strolls about in idleness, or lives in idleness, who is able to work, and has no property sufficient for his support"; and

(2) "Any person leading an idle, immoral, or profligate life, who has no property sufficient for his support, and who is able to work, and does not work"; and

(3) "Any able-bodied person having no property sufficient for his support, who loafs, loiters, or idles in any city, town, or village, or upon a public highway, or about a steamboat landing, or a railroad station, or any other public place in this state, or any place where intoxicating liquors are sold, without any regular employment"; and

(6) "Any person who is a professional gambler."

And it is well to note that (Code 1940 Tit. 14, Sec. 439): "In prosecutions for vagrancy the burden of proof shall not rest upon the state to establish the fact that the defendant has no property sufficient for his support, nor means of a fair, honest, and reputable livelihood, but whenever it shall be established by the proof in any prosecution under this chapter that the defendant has been guilty of wandering or strolling about in idleness, or living in idleness, and is able to work, or that such defendant is leading an idle * * * life, and that such defendant is able to work; or that the defendant, being able to work, loafs, loiters, or idles in the places named in subdivision (3) of section 437 of this title, * * * then, or in either of such events, a prima facie case of guilt is hereby declared to be established in all prosecutions under subdivisions [1, 2 and 3], of section 437 of this title (Code 1940 Tit. 14, Sec. 437, supra, we insert), and the burden of proof shall be upon the defendant to show that he has sufficient property from which to obtain a support, or sufficient means of maintaining a fair, honest, and reputable livelihood * * * but if the evidence for the defendant is sufficient when considered together with all the evidence in the case to raise a reasonable doubt as to his guilt, he shall be entitled to an acquittal."

We do not find it necessary, here, to decide whether or not the testimony for the State—there was none offered for appellant—was sufficient to be submitted to the jury on the single question of whether or not appellant was shown to be a "professional gambler."

■ The verdict of guilty returned by the jury was a general one; and of course could be referred to any sub-division or sub-head of the vagrancy statute under which the case was submitted to the jury, and the charge in which was sufficiently supported by the testimony.

■ Appellant's several written, requested and refused charges concerning

his being "a professional gambler" are either argumentative, defective for singling out a part of the evidence, abstract, confusing, misleading, involved, or incorrect. He would seem to be laboring under the impression that unless the testimony showed him to be a "professional gambler" he was entitled to have the jury instructed to acquit him. But, as appears, such was not the case. There was error in refusing no one of his said charges.

■ As we have now, perhaps, already intimated, the undisputed testimony—which we do not see the necessity of detailing—amply supported the charge of vagrancy as it rested upon sub-heads 1, 2 and 3, of Code § 437, supra; said sub-heads having been already hereinabove quoted by us.

The zealous—perhaps over zealous—Solicitor conducting the prosecution for the State, below, elicited testimony as follows from Abe Goldstein, one of the principal witnesses for the State, viz:

"Q. Abe, did you ever have any conversation with him (appellant) during that period of time?" (The period of twelve months prior to the beginning of the prosecution.) A. I talked to him right on the corner * * * on the northwest corner of 4th Avenue and 20th Street one afternoon a few minutes.

"Q. What did you say to him, Abe? A. He just got through talking with somebody. I stopped there and says 'Mickey, why don't you get you a job and go to work and cut all this racket foolishness out?'

"Q. What did he say? A. He just laughed * * * he did not answer me * * * he just laughed, and didn't say a word."

Of course appellant interposed due objections, and reserved proper exceptions to all that Goldstein testified to in the regard shown by the quoted excerpts from the transcription of his testimony.

And perhaps we should note that Abe Goldstein was a detective for the City of Birmingham, one of whose principal tasks during the time covered by the charge against appellant was to keep track of appellant, and his doings. And it would appear that appellant knew this to be the fact.

Strenuous insistence is made here by able counsel representing appellant that error to reverse the judgment of conviction was committed by the trial court in admitting into the evidence the testimony of Abe Goldstein which we have quoted above.

■ And we believe it is the fact that the evidence could only be admissible under the influence of the maxim qui tacet consentire videtur; and admission, inferred from acquiescence in the verbal statement of another. To quote from the opinion of Stone, J., in Fuller v. Dean, 31 Ala. 654: "In speaking of this kind of evidence, Mr. Greenleaf says: 'It should always be received with caution; and never ought to be received at all, unless the evidence is of direct declarations of that kind which naturally calls for contradiction;' * * * 'It may be impertinent, and best rebuked by silence.'—1 Greenl. Ev. § 199."

■ In its opinion in the case of Peck & Brother v. Ryan, 110 Ala. 336, 17 So. 733, 734, our Supreme Court said:

"The rule for the introduction of admission from silence has been stated to be, 'that the statement must be heard and understood by the party to be affected by it; that the truth of the facts embraced in it, must be within his knowledge, and that the statement must be made under such circumstances, and by such persons as naturally call for a reply.'" Citing Spencer v. State, 20 Ala. 24, 27, and authorities cited; Abercrombie v. Allen, 29 Ala. 281; Campbell v. State, 55 Ala. 80; Weaver v. State, 77 Ala. 26, 28; Williams v. State, 81 Ala. 1, 10, 1 So. 179; 60 Am.Rep. 133; 1 Greenl.Ev. Secs. 197, 199.

■ Probably the rule governing the admission of the testimony by Goldstein as to appellant's "reception" of the remarks, quoted, of Goldstein to him, is as well stated in 22 Corpus Juris Secundum, Criminal Law, § 734, at page 1258, as at any other place. We quote it, viz.: "Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is admissible in evidence as an admission by silence."

Considering that Abe Goldstein was a city detective charged, as appellant probably knew, with the duty of "keeping tab" on appellant; and that there was no charge pending or preferred against appellant at the time; and that the insidious, invidious, indirect and evasive nature of the remarks of Goldstein to appellant made them, possibly subject to the appellation "impertinent" as used in the opinion in Fuller v.

Dean, supra, we entertain grave doubts that appellant was called on for any more reply to said remarks than he gave. And like doubts are held by us as to whether or not the trial court erred in receiving into the evidence Goldstein's quoted testimony, above.

But we are relieved from making a decision.

As we believe we have already said, the testimony pointing to appellant's guilt under subheads 1, 2 and 3, above, was undisputed. The jury could not have acquitted him without stultifying themselves.

■ So, with or without the testimony being discussed, the verdict must, as we see it, have been as it was. Appellant clearly suffered no injury by the admission of same. Howell v. State, 28 Ala.App. 249, 182 So. 96. And no reversal of the judgment of conviction would be ordered, whether said testimony was wrongfully or rightfully admitted. Code 1940, Tit. 15, § 389.

We have tried to perform our duty under this Code 1940, Tit. 15, § 389, aided, as we have been, by the excellent briefs on file in the case. But we do not see the propriety of further extending our opinion.

It is clear to our minds, after faithful study of the record, that no error harmful to any right of appellant intervened in the proceedings.

The judgment is due to be affirmed. And it is so ordered.

Affirmed.